NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3780
_____

UNITED STATES OF AMERICA

v.

RAFAEL CABRERA,
                              Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-13-cr-00048-001)
Chief District Judge: Honorable Mark R. Hornak
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1
on November 10, 2020

Before: HARDIMAN, GREENBERG[*], and SCIRICA, *Circuit Judges*.

(Filed: July 28, 2021)
_____

OPINION[**]
_____

_____

[*] The Honorable Morton I. Greenberg participated in the decision in this case but died before the opinion could be filed. This opinion is filed by a quorum of the court. 28 U.S.C. § 46 and Third Circuit IOP 12.1(b).

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Rafael Cabrera appeals his 220-month sentence, imposed by the District Court after finding Cabrera qualified as a career offender under the 2013 version of the Sentencing Guidelines. Cabrera contends he cannot be a career offender following our decision in *United States v. Nasir*, 982 F.3d 144, 160 (3d Cir. 2020) (en banc), and, as a result, requests resentencing. We will vacate his sentence and remand for a de novo resentencing.

## I.

Cabrera was convicted of conspiring to distribute and possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(b)(B)(i) and 846. He was sentenced in October 2014 and re-sentenced in November 2019.[1] The court concluded at resentencing that Cabrera met the definition of a career offender under United States Sentencing Guidelines Manual § 4B1.1 (Nov. 1, 2013) because (a) he was at least 18 years of age when he committed the offense, (b) the offense of conviction was a controlled substance felony, and (c) Cabrera's two prior fleeing and eluding convictions qualified as crimes of violence. At re-sentencing, Cabrera's Guideline Range was 262-327 months' imprisonment. The court varied downward and imposed a 220-month term of incarceration. Cabrera appealed from his resentencing, contending the District Court

---

[1] The parties are familiar with the developments that led to the initial remand of Cabrera's sentence in 2016 and that occurred prior to resentencing in 2019, prompting this appeal. *See United States v. Cabrera*, 660 F. App'x 126, 132 (3d Cir. 2016) ("*Cabrera I*") (remanding initial sentence).

did not properly consider whether his prior convictions qualified as crimes of violence under U.S.S.G. § 4B1.2 after various changes in the law.

After the parties submitted briefing on the pending appeal, our en banc Court decided *Nasir*. In *Nasir*, the en banc Court overturned our longstanding precedent in *United States v. Hightower*, 25 F.3d 182 (3d Cir. 1994), and held that the definition of "controlled substance offense" provided in U.S.S.G § 4B1.2(b) does not include inchoate offenses, such as Nasir's attempt conviction. Cabrera filed a motion for summary reversal in April 2021, contending he was no longer a career-criminal in light of *Nasir*. The Government timely responded, contending Cabrera had forfeited this issue.

## II.

Cabrera contends he no longer qualifies as a career offender after *Nasir* because his offense of conviction, conspiracy, is an inchoate offense that no longer qualifies as a requisite controlled substance offense under U.S.S.G § 4B1.2(b). The Government acknowledges *Nasir's* holding, yet argues Cabrera forfeited this issue. Should we disagree, the Government urges, we should hold off on making a decision until the Supreme Court has had the opportunity to review *Nasir* and like cases or perhaps until the Sentencing Commission addresses §4B1.2. The Government points out that in 2018 the Sentencing Commission sought comment on proposed revisions to §4B1.2 and Application Note 1. But the Sentencing Commission cannot act on any proposals because it lacks the necessary quorum of four voting members. The Government also suggests that the Supreme Court may soon consider the issue. But there is no indication that the

3

Court will do so. And, of course, any predictions on future actions are speculative and will result in considerable delay.

Although the Government requests we delay our decision, it stated in its response to Cabrera's motion for summary reversal, "[i]f this court believes the District Court should adjudicate the effect of *Nasir* on Cabrera's career-offender status in the first instance, any remand should call for a de novo resentencing." Of the possible alternatives, we think the better resolution is to vacate Cabrera's sentence and remand this matter to the District Court for de novo resentencing to allow the District Court to adjudicate the effect of *Nasir* on Cabrera's career offender status in the first instance.

### A.

Although acknowledging the effect of *Nasir*, the Government contends Cabrera's argument—that he no longer qualifies as a career offender because his offense of conviction cannot be a predicate controlled substance offense under *Nasir*—was forfeited. We believe Cabrera's delay in raising the issue is excused under the extraordinary circumstance exception.

A defendant is a career offender under the Guidelines if, *inter alia*, the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). Cabrera's offense of conviction is conspiracy to distribute and possess with intent to distribute heroin under 21 U.S.C. §§ 841 and 846.[2] In

---

[2] The Guidelines define a "crime of violence" as including offenses that have "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a). The parties do not dispute that Cabrera's offense of conviction is not a crime of violence because it has no such element.

*Nasir*, the Third Circuit, sitting en banc, held that inchoate offenses are not included in the "controlled substance offenses" set forth in U.S.S.G § 4B1.2(b). 982 F.3d at 160.[3] Inchoate offenses include conspiracy to commit a crime. *Id.* at 156 n.10 (citing *Offense*, Black's Law Dictionary (11th ed. 2019)); *see also*, *United States v. Salahuddin*, 765 F.3d 329, 341 (3d Cir. 2014) (citing *Iannelli v. United States*, 420 U.S. 770, 777 (1975)) (concluding the same). Thus, Cabrera contends, conspiracy to distribute and possess with intent to distribute heroin is not a controlled substance offense under § 4B1.2(b).

Cabrera did not raise this issue—whether his offense of conviction still qualified as a controlled substance offense under § 4B1.2(b)—until after appellate briefing was complete. But failure to raise it may be excused under the extraordinary circumstance exception. *United States v. Albertson*, 645 F.3d 191, 195 (3d Cir. 2011). This exception may be applied where the circumstances weigh in favor of allowing the untimely issue to be heard—the most relevant factors include "whether there is some excuse for the failure

---

[3] Some other courts of appeals have agreed, but there is a split of authority. *Compare United States v. Havis*, 927 F.3d 382, 285-87 (6th Cir. 2019) (concluding attempt crimes do not qualify as controlled substance offenses), *and United States v. Winstead*, 890 F.3d 1082, 1091 (D.C. Cir. 2018) (holding the controlled substance definition "clearly excludes" inchoate offenses), *with United States v. Merritt*, 934 F.3d 809, 811 (8th Cir. 2019) (concluding conspiracy to commit a controlled substance offense is a controlled substance offense and rejecting Petitioner's contention that § 4B1.2 omits inchoate offenses), *cert. denied*, 140 S. Ct. 981 (2020). *See also United Sates v. Tabb*, 949 F.3d 81, 89 (2d Cir. 2020); *United States v. Adams*, 934 F.3d 720, 729 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 824 (2020); *United States v. Crum*, 934 F.3d 963, 966-967 (9th Cir. 2019); *United States v. Lange*, 862 F.3d 1290, 1295 (11th Cir. 2017); *United States v. Nieves-Borrero*, 856 F.3d 5, 9 (1st Cir. 2017); *United States v. Dozier*, 848 F.3d 180, 183 & n.2 (4th Cir. 2017); *United States v. Martinez*, 602 F.3d 1166, 1174 (10th Cir. 2010); *United States v. Guerra*, 962 F.2d 484, 485-487 (5th Cir. 1992).

to raise the issue in the opening brief; how far the opposing party would be prejudiced; and whether failing to consider the argument would lead to a miscarriage of justice or undermine confidence in the judicial system." *Id*. (citation omitted).

In *Albertson*, the appellant challenged the term of his supervised release and first raised the challenge to his supervised release conditions in his reply brief, filed around one month after we issued the decision on which Albertson's challenge to conditions was based. *Albertson*, 645 F.3d at 195-6; Appellant's Reply Brief in *Albertson*, 2010 WL 8514653, at **5-6 (filed Mar. 2, 2010). We considered Albertson's delayed challenge to his conditions under the emergency circumstance exception because we determined the Government would not be prejudiced and failure to correct the plain error would result in a miscarriage of justice. *Albertson*, 645 F.3d at 196.

Like in *Albertson*, here the Government will not be prejudiced and not correcting the error will lead to a miscarriage of justice. First, the Government has been given a chance to respond to Cabrera's *Nasir* argument, so there is no prejudice to the Government in considering it. Second, as further explained below, a Guidelines calculation error is ordinarily a plain error resulting in a miscarriage of justice if not corrected. Balancing the factors set forth in *Albertson*, we believe Cabrera's delay is excused.[4]

---

[4] Given the timing of the *Nasir* decision, we do not believe Cabrera's delay—though more significant than the delay in *Albertson*—favors a finding of forfeiture in this case. Cabrera's counsel formally raised contentions based on *Nasir* in an April 2021 motion. But the en banc *Nasir* decision was issued on December 1, 2020, almost one month after the close of briefing.

B.[5]

The Government contends we should ignore the impact of *Nasir* on Cabrera's career-offender status because (a) Cabrera failed to identify the plain error standard of review in his post-*Nasir* motion for summary reversal and (b) Cabrera did not adequately demonstrate that the court plainly erred. In light of the convoluted procedural context of this case, we do not believe Cabrera's failure to identify the standard in his post-*Nasir* motion for summary reversal is fatal to Cabrera's argument.

The first two plain error prongs are satisfied. We consider an error to be "plain" for plain error review as long as the error is plain at the time of appellate review. *Henderson v. United States*, 568 U.S. 266, 273 (2013). As explained, *Nasir*, 982 F.3d at 160, overturned decades-long precedent to hold the controlled substance definition does not include inchoate offenses. Accordingly, on our review, the District Court, without having had the benefit of *Nasir*, clearly erred in deeming Cabrera's offense of conviction a career-offender predicate-controlled substance offense and calculating Cabrera's Guideline range with the career offender enhancement.

The Supreme Court has explained that Guidelines calculation errors typically satisfy plain error's third and fourth prongs. *See Molina-Martinez v. United States*, 136 S.

---

[5] Because Cabrera did not raise this specific challenge to his designation as a career offender at resentencing, we review for plain error. *United States v. Davis*, 407 F.3d 162, 164 (3d Cir. 2005). Plain error review consists of four steps, with the burden on the appellant at each. *United States v. Duka*, 671 F.3d 329, 354 (3d Cir. 2011). The appellant must show (1) an error; (2) which is clear or obvious; (3) which affected his substantial rights; and (4) which would affect the fairness, integrity, or public reputation of judicial proceedings if unrectified. *Id*. at 355.

Ct. 1338, 1346 (2016) ("In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome."); *see also Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1911 (2018) ("In the ordinary case . . . the failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings."). But "unusual circumstances" may rebut this "presumption" of prejudice, *United States v. Aguirre-Miron*, 988 F.3d 683, 689 (3d Cir. 2021), and "[t]here may be instances where countervailing factors satisfy the court of appeals that the fairness, integrity, and public reputation of the proceedings will be preserved absent correction," *Rosales-Mireles*, 138 S. Ct. at 1909. We are not convinced unusual circumstances or countervailing factors overcome the presumed prejudice here.

For Cabrera to succeed on the third prong, he must establish "a reasonable probability that the District Court would have imposed a lower sentence absent the error." *United States v. Davis*, 985 F.3d 298, 308 (3d. Cir. 2021). The Government contends Cabrera cannot because this case presents the unusual circumstance that the sentence imposed at resentencing will fall within the Guideline range at a hypothetical second resentencing. Specifically, the 220-month term imposed at resentencing falls within the non-career criminal Guideline range of 188-235 months. But the Supreme Court has held this argument insufficient to defeat a defendant's showing of a reasonable probability of a

lower sentence.[6] The Government's argument also fails because it assumes the District Court would not have varied downward from a lower Guidelines range. Yet the court varied downward once already based, in part, on Cabrera's rehabilitation in prison. J.A. 137-138; 140. And the District Court explained that it was required to seriously consider Cabrera's career offender status in fashioning its sentence. *See* App. 139-40 (District Court observing in imposing prior sentence that "one of the principles behind the career offender enhancements are when people make a career of committing serious crimes, that should be reflected in sentencing"). We cannot say that without that consideration the District Court would have imposed the same sentence.

The Government's assumption that the court would not have varied downward if it no longer treated Cabrera as a career offender ignores the consideration given to career offender status by the District Court and is based on the same reasoning the Government offers to argue that Cabrera cannot satisfy the fourth prong: Cabrera has received windfalls through the delay of these proceedings. The two windfalls from this delay, the Government contends, would be taken into account by the court to resentence Cabrera on another remand to the same 220-month sentence and would nullify any miscarriage of justice that might otherwise result from not correcting the *Nasir* error. But the

---

[6] *See Molina-Martinez*, 136 S. Ct. at 1345 ("When a defendant is sentenced under an incorrect Guidelines range—*whether or not the defendant's ultimate sentence falls within the correct range*—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." (emphasis added)).

Government offers nothing to show under which sentencing factor this "windfall consideration" falls. Moreover, Cabrera did not obtain windfalls from the delay.[7]

As to the first alleged windfall, the crux of the Government's argument is that the misapplication of *Johnson v. United States*, 135 S. Ct. 2551 (2015), enabled delay and permitted application of a lower sentence. But *Beckles v. United States*, 137 S. Ct. 886, 892 (2017), was issued before Cabrera was resentenced, clarifying that *Johnson* did not apply to the residual clause in the career offender Guidelines. Ultimately, Cabrera did not receive any direct benefit under *Johnson* at his 2019 resentencing.

The Government also contends Cabrera received a windfall of a lower statutory maximum because delay of the proceedings led to his resentencing after the passage of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018). But the alleged relief Cabrera received from any delayed resentencing would not impact Cabrera's applicable Guideline Range if he is not a career offender under *Nasir*. And this alleged windfall resulted, at least in part, from the Government's own representation to the District Court that it *did not* contest that the Section 851 Information no longer applied to enhance Cabrera's applicable sentencing penalties after the First Step Act was enacted on December 21, 2018. *See United States v. Hodge*, 948 F.3d 160, 163 (3d Cir.) (clarifying the First Step Act does not apply to defendants sentenced prior to the First Step Act's enactment where their sentences were only modified and were not vacated), *cert. denied*,

---

[7] The Government also suggests Cabrera inappropriately extended proceedings. We do not believe Cabrera's behavior rose to a level that unfairly prejudiced the Government, particularly where it lodged no objection in numerous joint status and other filings in the District Court after remand and prior to the resentencing.

141 S. Ct. 347 (2020). As a result, Cabrera's statutory maximum decreased from life to 40 years. Although a lower statutory maximum provided Cabrera a form of relief, that decrease in Cabrera's statutory maximum only impacts Cabrera's Guideline Range if one continues to assume, as the Government does, that he is a career offender. Section 4B1.1(b) lays out the offense level increase that corresponds to a career offender's statutory maximum. But § 4B1.1 cannot apply to Cabrera if he is not a career offender.

If Cabrera is not a career offender, there is a reasonable probability that the sentence imposed on him as a non-career offender would have differed, and the countervailing factors presented by the Government do not satisfy us that failing to correct the error will not harm the "fairness, integrity, and public reputation of the proceedings." *Rosales-Mireles*, 138 S. Ct. at 1909. Accordingly, there was reversible plain error.

We will vacate and remand for a de novo resentencing, so that the parties can fully litigate *Nasir*'s impact on Cabrera's offense level, Guidelines range, and sentence, *see United States v. Ciavarella*, 716 F.3d 705, 735 (3d Cir. 2013) (highlighting that a de novo resentencing is appropriate where a vacated count will impact a defendant's offense level, Guideline range, or sentence), and the extent to which the First Step Act applies at resentencing. *See Hodge*, 948 F.3d at 163; *United States v. Aviles*, 938 F.3d 503, 515 n.8 (3d Cir. 2019).

## III.

For the foregoing reasons, we will vacate the sentence imposed by the District Court and remand for proceedings consistent with this opinion.