United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 18, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 02-20992
Summary Calendar

———————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERRY LEE GRAY,

Defendant-Appellant.

———————————————————————————————

Appeal from the United States District Court
for the Southern District of Texas
(H-02-CR-214-1)

———————————————————————————————

Before BARKSDALE, DeMOSS, and BENAVIDES, Circuit Judges.

PER CURIAM:*

Jerry Lee Gray pleaded guilty to destruction of letter boxes intended and used for the receipt and delivery of mail; he was sentenced, *inter alia*, to 21 months' imprisonment. Gray and his coconspirator pried off the mailbox panels in an apartment building, exposing 42 individual mailboxes. The building's security guard informed police that mail was in some of the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

individual boxes, but the record does not reflect how many of them contained mail.

The probation officer recommended adding two levels to Gray's base offense level, pursuant to Sentencing Guidelines § 2B1.1(b)(2)(A), because there were more than ten and fewer than 50 victims. Gray objected to this adjustment, contending: under the Guidelines, there must be mail inside a mailbox for the owner to be considered a victim; and, because there was no indication how many boxes contained mail, there was insufficient evidence to show more than ten victims. The probation officer responded that the Guidelines require only that the object of the offense involve the theft of mail. The district court overruled Gray's objection.

We review interpretation of the Guidelines *de novo*; factual findings, for clear error. *E.g., United States v. Claiborne*, 132 F.3d 253, 254 (5th Cir.), *cert. denied*, 523 U.S. 1144 (1998). As noted, § 2B1.1(b)(2)(A) provides for a two-level adjustment if the offense involved ten or more, but fewer than 50, victims.

> In a case in which undelivered United States mail was taken, *or the taking of such item was an object of the offense*, ... 'victim' means [(1) any person who sustained any part of an actual (financial) loss or bodily injury from the offense, or (2)] who was the intended recipient, or addressee, of the *undelivered* United States mail.

§ 2B1.1, cmt. n.3(B)(i) (emphasis added). "Undelivered United States mail" means "mail that has not actually been received by the

addressee or his agent (*e.g.*, mail taken from the addressee's mailbox)". § 2B1.1, cmt. n.3(B)(iii).

Neither of the definitions of "victim" are applicable to the 42 owners, absent evidence that they suffered damage or had undelivered mail. The management company, not the tenants, paid for the repairs to the boxes and was thus the only known economic victim. Moreover, as stated, there is no indication that Gray or his coconspirator actually removed mail from any of the individual mailboxes or that any mail went otherwise undelivered.

Presumably the taking of undelivered mail inside the boxes was the object of the offense, and the intended recipients of that mail were its intended victims. Thus, anyone who had mail could properly be counted as a victim for purposes of the Guideline. Again, however, there is no indication that this group was at least ten in number.

The Government relies, in part, on a "special rule" involving undelivered mail in a Postal Service box, vehicle, satchel, or cart, and for which there are unique proof problems concerning the number of victims. *See* U.S.S.G. § 2B1.1, cmt. n. 3(b)(ii). Needless to say, the "special rule" is not applicable.

The application of the number-of-victims adjustment is **VACATED** and the case **REMANDED** for resentencing consistent with this opinion.

*VACATED and REMANDED*

3